288 P.2d 1073

Robert MAULHARDT, John Maulhardt, Richard Maulhardt, Marie Maulhardt Miner and Alma Maulhardt Murphy, co-partners, d/b/a L. G. Maulhardt Equipment Company, Plaintiffs-Appellants,

v.

J. D. COGGINS COMPANY, a New Mexico Corporation, Defendant-Appellee.

No. 5918.

Supreme Court of New Mexico.

Sept. 16, 1955.

Rehearing Denied Nov. 2, 1955.

176

McAtee & Toulouse, Albuquerque, for appellants.

Irwin S. Moise, Lewis R. Sutin, Albuquerque, for appellee.

PER CURIAM.

Upon consideration of motion for rehearing, the original opinion is withdrawn and the followng substituted therefor.

### Opinion

COMPTON, Chief Justice.

This is an action in replevin to recover possession of a tractor allegedly detained by appellee unlawfully, or its value, and for damages for its unlawful detention. The complaint charges that on the 20th day of June, 1952, appellants sold the tractor in question to R. K. Kaime and Joe Kaime, the consideration therefor being secured by chattel mortgage upon the tractor; that the Kaimes had defaulted in installment payments as provided in the chattel mortgage; that appellee acquired possession of the tractor through some unlawful source and that demand for its return had been refused. In its answer, appellee denied the allegations of the complaint. As an affirmative pleading, it alleges that the Kaimes, then lawfully in possession, brought the tractor to appellee's place of business for repairs and parts; that extensive repairs and parts were furnished by appellee in amount of $4,650.55. Appellee then sought judgment establishing the priority of its lien and for foreclosure. Appellants' reply admits the making of repairs, but states affirmatively that all such work on the tractor was done off the premises of appellee, hence no lien attached;

that in the alternative, the lien upon the tractor had been lost by parting with its possession.

The facts are summarized. On June 20, 1952, appellants sold and delivered the tractor in question and certain equipment to R. K. and Joe Kaimes for a consideration of $29,500, secured by a conditional installment note, the title to remain in the appellants until the note was fully paid. The sale was made with the understanding that the equipment was to be brought to New Mexico and placed on construction jobs in San Juan County. A chattel mortgage was also taken by appellants and filed in San Juan County. The chattel mortgage in part provided: "Mortgagor agrees * * to keep said property in as good condition and repair as it now is, ordinary wear and tear excepted * * *" It was during the trial that it was first learned that the basis of the agreement was a conditional installment note, and the chattel mortgage was given merely that the conditional buyers might bring the equipment to New Mexico.

Appellee's place of business is in Albuquerque, New Mexico, and on various occasions, the Kaimes would engage the services of appellee to repair the equipment wherever it might be located on construction work, as it was essential that the tractor be kept in good running condition in order to discharge appellants' account. At other times, parts of the tractor were brought to appellee's place of business for repairs. Thus it was, appellee from time to time, furnished labor upon, repairs and parts for the tractor in amount of $4,556.-61. Finally, on March 18, 1953, the tractor was brought to appellee's place of business for service and repairs and has since been detained by appellee for the amount claimed.

Following a hearing upon the merits, judgment was entered establishing the priority of appellee's lien and appellants bring the cause here for review and the correction of alleged errors.

Assignments of error are argued under four points: (1) That appellee did not acquire a lien since the tractor was not in its possession when the work and repairs were done; (2) that appellants were entitled to judgment for possession of the tractor and damages; (3) that the court erred denying appellants an election; (4) that error was committed in the allowance of unrelated items of expense.

The pertinent statutes are sections 61–3–1 and 61–3–7, 1953 Comp. Section 61–3–1 reads:

"All artisans and mechanics shall have a lien on things made or repaired by them for the amount due for their work, and may retain possession thereof until said amount is paid. Any person or corporation who repairs any motor vehicle or furnishes parts there-

for, at the request or with the consent of any person lawfully in possession of any such motor vehicle, shall have a lien upon such motor vehicle or any part or parts thereof for the sum due for repairing the same, and for labor furnished thereon, and for *all costs incurred in enforcing such lien* and may detain such motor vehicle in possession until such lien be paid." (Emphasis ours.)

Exclusive possession by a mechanic of chattels undergoing repairs by him, is not essential to the creation of a lien. Universal Credit Co. v. Printy, 45 N.M. 549, 119 P.2d 108; Abeytia v. Gibbons Garage, 26 N.M. 622, 195 P. 515, citing with approval Hiner v. Pitts, 89 Or. 602, 175 P. 133, 134. In the Hiner Case, the plaintiff had gone upon the premises of Pitts to repair an engine and thereafter asserted a lien for his services. The Oregon Court in commenting, said:

"* * * It was competent for the legislative power to award a lien irrespective of possession. This statute directly declares that the persons named therein, who rendered the services described, at the request of the owner of the chattel, shall have a lien thereupon. * * * Possession in the sense of exclusive custody is made a non-essential by this enactment.

* * * * * *

"* * * For the purpose of mending the machine the then owner granted to them a qualified custody of it. * * * The law should be construed so as to give it effect as reasonably intended by the Legislature. Otherwise, no one, however deserving, could ever acquire a lien upon a chattel which would be too large to remove conveniently from the owner's premises."

See also Douglass v. McFarland, 92 Cal. 656, 28 P. 687; Keystone Mfg. Co. v. Close, 81 W.Va. 205, 94 S.E. 132, 3 A.L.R. 857; Holderman v. Manier, 104 Ind. 118, 3 N.E. 811.

Appellants further contend that possession of the tractor having been surrendered to the buyers on numerous occasions, appellee's lien, if any was lost. They rely upon section 61–3–7, which reads:

"Any lien acquired under the provisions of this law (61–3–1 to 61–3–13) except those provided in sections 3336 (61–3–4) and 3337 (61–3–5) hereof shall become void, if the person entitled to the same shall consent that the property subject thereto be removed from his control or possession, *except as against the person at whose request the repairs or parts were furnished and the labor performed.* * *" (Emphasis ours.)

The statute is clear enough. It is definitely settled in this jurisdiction

that a mortgagor may not, without the authority of the mortgagee, expressed or implied, create a lien on mortgaged property as to give it precedent over prior incumbrances. Universal Credit Co. v. Printy, supra. But the case rests upon a different principle. It rests upon the doctrine of agency; authority implied from the mortgagee to the mortgagors from the circumstances, to create the lien in question. Thus, the stipulation contained in the chattel mortgage, "Mortgagor agrees * * * to keep the said mortgaged property in as good condition and repair as it now is, ordinary wear and tear excepted * * *", places appellee squarely within the exception contained in the statute. The term impliedly, to say the least, constituted the conditional purchasers, then in lawful possession, the agents of appellants and clothed them with authority to do all that was necessary to keep the tractor in a good state of repair. It is the same as if the work and repair had been done at the instance of appellants. Consequently, appellee's lien continued against the conditional sellers, notwithstanding possession of the tractor or parts thereof may have been surrendered to the conditional buyers from time to time.

In Personal Finance Co. of Hammond v. Flecknoe, 216 Ind. 330, 24 N.E.2d 694, 697, in discussing a like provision, the court said:

"* * *. In the case of Grusin v. Stutz Motor Car Co. supra, (206 Ind. 296, 187 N.E. [382] 383) where a mortgage contained a clause which provided that the mortgagor 'shall keep said automobile in good repair at his own expense' a mechanic subsequently making repairs on the automobile covered by the mortgage was held to have a superior lien.

"A mortgagee who accepts a mortgage containing such a clause and permits the mortgagor to continue to use the automobile is in a position very similar to the mortgagee who has actual knowledge of the repairs being made and makes no objection thereto. The mortgagee after in effect, ordering the repairs made should not be heard to say that the lien of his mortgage is superior to the lien of the mechanic."

See also National Bond & Inv. Co. v. Haas, 124 Neb. 631, 247 N.W. 563, 88 A.L.R. 1180; De Van Motor Co. v. Bailey, 177 Miss. 441, 171 So. 342.

It follows that appellants were not entitled to the immediate possession of the tractor until such time they discharged appellee's lien. Not having done so, appellants' claims of possession must be denied.

■■ Appellants' last point is that improper items of expense were allowed. They object to the following items:

1. $324.80 allowed for travel.

2. $6.44 allowed for telephone calls.

3. $26.67 allowed for air freight.

4. $342.48 allowed on Invoice No. 13266, which plaintiffs say included repairs on both the tractor and the White Truck.

5. $279.26 on Invoice No. 13750.

6. $81.60 on Invoice No. 2182 for two reels of wire.

7. $17.50 for fuel pump on Mr. Kaime's personal car, Invoice No. 13977.

8. $4.75 allowed for one cylinder of Oxygen, Invoice No. 13750.

The computation made by the trial court is not entirely clear.

The total amount claimed by appellee was $4,650.58. Judgment was given for $4,556.-41, the trial court disallowing $94.14. The record is silent as to what items were disallowed; nevertheless, from a careful review of the record, we are of the opinion that items of expense 4, 6 and 7, totalling $441.58, allowed by the court, do not find support in the evidence. Consequently, items 4, 6 and 7 also should be disallowed and the judgment reduced accordingly in amount of $347.44.

The conclusion reached disposes of other questions. The cause will be remanded with directions to the trial court to reinstate the case upon his docket, modify the judgment to conform herewith, and enter judgment against appellants and the sureties upon their supersedeas bond, and it is so ordered.

LUJAN, SADLER, McGHEE and KIKER, JJ., concur.